IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA SUE JEWELL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 20-2375 |

O P I N I O N

SCOTT W. REID  
UNITED STATES MAGISTRATE JUDGE

DATE: September 28, 2021

Diana Sue Jewell brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. For the reasons set forth below, I will deny Jewell's Request for Review and enter judgment in favor of the Defendant.

## I. *Factual and Procedural Background*

Jewell was born on February 12, 1973. Record at 131. She completed high school. Record at 143. In the past, she worked as a certified nursing assistant in a retirement community. Record at 143. On September 6, 2017, Jewell filed an application for DIB. Record at 131. In it, she alleged disability since January 27, 2017, as a result of fibromyalgia, lupus, migraine headaches, complex regional pain syndrome, and a sleep disorder. Record at 131, 142.

Jewell's application for benefits was denied on November 2, 2017. Record at 61. She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 70. A hearing took place on December 21, 2018. Record at 32.

On March 4, 2019, the ALJ issued a written decision denying Jewell benefits.  Record at 16.  The Appeals Council denied Jewell's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner.  Record at 1.  Jewell then filed this action.

## II.    *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

### III.    The ALJ's Decision and the Claimant's Request for Review

In his Decision, the ALJ determined that Jewell suffered from the severe impairments of fibromyalgia, lupus, complex regional pain syndrome of the right wrist, migraines, and bursitis of the hip. Record at 18. He decided that none of her impairments, and no combination of impairments, met or medically equaled a listed impairment. Record at 18-19.

As to Jewell's RFC, the ALJ wrote:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), except the claimant can continuously sit and occasionally stand, walk, climb, balance, stoop, kneel, crouch, crawl, or use foot controls bilaterally. She can continuously reach, handle, finger, feel, push, and pull with the left upper extremity. The claimant can also frequently reach, handle, finger, feel, push, or pull with the right upper extremity. She can occasionally reach overhead bilaterally and tolerate occasional exposure to temperature extremes, humidity, wetness, dust, fumes, gases, or vibrations. She can never be exposed to loud noise work environments. The claimant can perform routine, repetitive-type tasks.

Record at 19-20.

3

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Jewell could not return to her prior work, but could work as an information clerk, ticket taker, or a cashier, all of these with a sit/stand option. Record at 26. He decided, therefore, that she was not disabled. *Id*.

In her Request for Review, Jewell argues that the ALJ erred in several respects in assessing her RFC with respect to her manipulative limitations. She also maintains that the ALJ's evaluation of her subjective complaints is unsupported by substantial evidence.

## IV.   Discussion

### A.   *Jewell's Manipulative Limitations*

On January 27, 2017, Jewell's alleged disability date, a nursing home patient grabbed and twisted her right arm and hand. Record at 314. On that day, James Rochester, MD, Jewell's treating Workers' Compensation physician, found that Jewell's right upper extremity was limited to lifting no more than two pounds; pushing and pulling no more than five pounds; and performing repetitive motions no more than 60 times per hour. Record at 316. He therefore limited her to modified duty. *Id*. On other records, however, Dr. Rochester indicated that Jewell was limited to modified duty with no use of the right hand. Record at, e.g., 239 (June 19, 2017: "No Use Right Hand"); 243 (May 31, 2017: "One handed work with left hand only").

During his treatment of Jewell for her right upper extremity impairment, Dr. Rochester prescribed physical therapy and referred her to pain management which prescribed stellate ganglion injections. Record at 377, 386, 406 (Note from LGH Pain Management: "Diana S. Jewell … was referred to our clinic by Rochester, James, MD for chronic pain consultation and evaluation of right wrist pain"). On July 24, 2017, Dr. Rochester released Jewell to unmodified work duties, noting that her "right forearm contusion, right forearm sprain, right wrist sprain"

were "resolved." Record at 236. He noted, however, a diagnosis of "complex regional pain syndrome 1, unspecified." *Id*.

Richard Frey, D.O., a general practitioner, examined Jewell on August 16, 2017, and wrote in his treatment note:

> Pt is not able to work based on my exam today performing her duties as a nurse's aide. My findings today are consistent with the diagnosis listed. I feel she should continue to get pain management with injections and medications. She certainly may be able to perform some other duties that would not require use of her right hand depending upon how her overall pain situation is managed. Certainly, her prognosis is guarded since this has been 8 months and she still is not really functional. She may continue to wear the wrist splint.

Record at 385.

The only other physician to offer an opinion as to Jewell's level of impairment in her right upper extremity was Minda Bermudez, M.D., the reviewing agency physician. In a report dated November 1, 2017, she indicated that Jewell had no manipulative limitations, and retained the ability to frequently lift, carry, push, and pull consistently with the requirements of work at the light exertional level. Record at 56, 57.

The ALJ wrote that he found Dr. Rochester's opinion "somewhat persuasive," and consistent with the medical evidence as a whole. Record at 24. Nevertheless, he departed from Dr. Rochester in finding that Jewell continued to be limited to frequent use of her right upper extremity as opposed to constant. *Id*. Also, in releasing Jewell from workers' compensation, Dr. Rochester implicitly found that she could return to work as a CNA, which the vocational expert testified was customarily a job at the medium exertional level. Record at 45. The ALJ clearly disagreed with Dr. Rochester in this respect, since he limited Jewell to a reduced range of light work, with less use of her right upper extremity than her left. Record at 26.

5

The ALJ also found Dr. Frey's opinion to be "somewhat persuasive."  Record at 24.  He wrote that it was not entirely consistent with the remainder of the medical evidence, citing both Dr. Rochester's finding that Jewell could return to unmodified work duties, and Jewell's description of herself to health care providers as having progressed in pain control and mobility.  *Id*.  The ALJ ended his evaluation of Dr. Frey's report by noting that, although he did not entirely accept his opinion, "the residual capacity has incorporated the claimant's lessened ability with regard to her right hand and wrist."  *Id*.

As to Dr. Bermudez, the ALJ wrote that he found her opinion "persuasive."  Record at 23.  However, he did not accept her findings in whole.  As above, Dr. Bermudez found Jewell capable of the full range of light work, with no manipulative limitations.  Record at 56-7.  The ALJ limited Jewell to a lesser frequency of reaching, handling, fingering, feeling, pushing, or pulling with the right extremity, as compared to the left extremity, with only occasional overhead lifting.  Record at 26.

Jewell maintains that, since no medical professional opined that she had the exact limitations included in the RFC assessment, the ALJ wrongly speculated as to her RFC, "independently of any medical source."  Plaintiff's Brief at 5.  However, the ALJ has not only the right but the duty to analyze the relevant evidence to develop an appropriate RFC assessment.  20 C.F.R. §404.1545; *and see Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (an ALJ must consider and evaluate the medical evidence in the record).  Because the ALJ had before him Dr. Bermudez's opinion that Jewell had no manipulative limitations at all, and Dr. Frey's report that Jewell could do only work "that did not require use of her right hand," he was empowered to reach a conclusion which lay somewhere between those two assessments without using impermissible speculation.

Jewell also argues that the ALJ should not have faulted Dr. Frey's opinion as inconsistent with Dr. Rochester's, when Dr. Frey's opinion was the more recent. However, all the medical opinions were given within a few months. If recency were the only test for persuasiveness, the ALJ would have adopted in full the opinions of Dr. Bermudez, who issued the most recent of the three reports, and imposed no limitations on Jewell's use of her upper extremities. *See* Record at 57. However, the ALJ differed from Dr. Bermudez in favor of Jewell.

It could also be noted that the utility of Dr. Frey's opinion is limited by the fact that it was offered only on the issue of whether Jewell could "perform her duties as a nurse's aide." Record at 385.[1] The ALJ agreed with Dr. Frey that she could not, writing: "The demands of the claimant's past relevant work exceed her reduced range of light residual functional capacity." Record at 25. This, however, is not enough for a finding of disability under the Social Security Act, which requires inquiry into whether a claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v) and (g).

Finally, Jewell maintains that the ALJ erred in failing to "contact" Bailey Ellis, PA-C, who saw her at LGH Pain Management in connection with stellate ganglion blocks performed by Madhavi Reddy, MD, on her right arm. Record at 401, 405. Presumably Jewell means that the ALJ could have requested a functional assessment from Ms. Ellis. However, although Ms. Ellis reported that Jewell had a "very limited" range of motion in her right wrist and thumb, she principally relied on Jewell's description of her own symptoms. Jewell writes that Ms. Ellis "noted Plaintiff could not pick up items with her right hand", but the treatment note actually states: "She [i.e., Jewell] *feels that* she cannot pick anything up with the right hand." Plaintiff's Brief at 6, Record at 406. (Emphasis supplied).

---

[1] Indeed, Dr. Frey's treatment note reads: "She is here for follow up worker comp. … WC wants to drop benefits regarding the wrist/hand … Requesting work note." Record at 385-6.

Further, the ALJ was clearly aware of the physical examination results from LGH Pain Management, since he mentioned them in his decision, citing objective evidence which tended to confirm the diagnosis of complex regional pain syndrome.  Record at 22.  This included a difference in temperature between the left and right wrists, and hypersensitivity to touch.  *Id*.  In this context, it does not appear that further assessments from Ms. Ellis would have been so crucial that the ALJ erred in failing to seek them.

Moreover, even if the ALJ somewhat overestimated Jewell's manipulative abilities with her right hand, this would not necessarily invalidate his decision that she was not disabled.  The vocational expert who testified at the hearing stated in response to questions from Jewell's counsel that the identified jobs of ticket taker and cashier would remain available to an individual who could not perform fingering and feeling with the right hand, if they could "do reaching and handling."  Record at 48-9.  Thus, Jewell has not shown a basis for disturbing the ALJ's conclusions as to her manipulative limitations.

### B.     *Jewell's Subjective Complaints of Pain*

At the hearing, Jewell testified that she suffered from constant, "widespread", pain.  Record at 37-8.  The pain medicine only "took the edge off."  *Id*.  She had approximately three migraine headaches per week.  Record at 40.  The complex regional pain syndrome in her right hand, wrist, elbow, and shoulder caused numbness but also pain.  Record at 40-41.  She could not lift over five pounds.  *Id*.  Although her 18-month-old grandson lived with her, she testified that her boyfriend "pretty much does it all for my grandson … he has to give him a bath and all that."  Record at 43.  She did, however, put her grandson to bed.  Record at 43-4.  She also took a daily walk, and did some "light housework," although that was difficult since a recent "slip and fall" on the sidewalk hurt her right knee.  Record at 41.

Jewell's representations in the Disability Report she completed as part of her application for benefits were largely similar to her testimony, other than that she did not yet live with her small grandson. She wrote:

> I am not able to lift with my right hand or grasp. The pain radiates up my arm sometimes. My joints, back and neck hurt from the fibromyalgia/lupus that makes it hard to lift. My migraines get so bad that I get nauseated/vomit. And I have extreme fatigue from lupus. I take Ambien but still have trouble sleeping at night.

Record at 177.

As to daily activities, Jewell indicated that she prepared simple meals a few days per week, and did light cleaning with her left hand, such as dusting, and putting the laundry in the washer or dryer. Record at 179. She was able to drive. Record at 180. She shopped in stores for food and clothing a few times per week, for one or two hours at a time. *Id*.

The ALJ explained the two-step process which the regulations required him to use when evaluating a claimant's symptoms, citing 20 C.F.R. § 404.1529 and SSR 16-3p. Record at 20. First, he needed to determine whether an underlying medically determinable impairment existed which could be reasonably expected to produce the symptoms alleged. *Id*. If such an impairment existed, he would evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they imposed functional limitations. *Id*.

The ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id*.

Jewell argues that, although the ALJ cited 20 C.F.R. § 404.1529 and SSR 16-3p, he did not actually apply the two-step sequence. She maintains that the paragraph quoted above was "boiler plate," inadequate to support his conclusions.

Of course, the single paragraph quoted above would be inadequate, if the ALJ went no further. Immediately after that paragraph, however, the ALJ specifically discussed Jewell's representations as to her own symptoms. *Id*. He then discussed the evidence of record with respect to Jewell's migraine headaches, lupus, fibromyalgia, and impairment of the right upper extremity, including complex regional pain syndrome, and back pain. Record at 20-23.

In his discussion of the evidence, the ALJ noted Jewell's subjective complaints to her medical treaters, and her diagnoses. However, he also noted reports that her symptoms improved with treatment. For example, Jewell indicated in November, 2018, that her headaches had improved "upon starting a new medication", and that they were less frequent and less severe. Record at 21, *citing* Record at 589. On January 4, 2018, her doctor found that she appeared to be "doing quite well with just the hydroxychloriquine alone" for her lupus, having stopped taking methotrexate. Record at 22, *citing* 556. The stellate ganglion injections also gave considerable relief, although it was temporary. Record at 404 (August 29, 2017).

The ALJ also took note of several normal medical examinations, which included a finding of full strength in all limbs, even her right arm. Record at 399 (August 18, 2017, "wrist strength was normal bilaterally, elbow strength was normal bilaterally, shoulder strength was normal bilaterally"); 569 (May 18, 2018, "Motor examination reveals 5/5 strength in the upper and lower extremities … sensation was intact to primary modalities); 590 (November 30, 2018, same as May 18, 2018).

The ALJ observed that Jewell's activities of daily living included walking, light housework, grocery shopping, and meal preparation. Record at 24. This statement is supported by the Disability Report discussed above. The ALJ stated: "These activities suggest an ability to perform work at the less than light exertional level." *Id.*[2]

As discussed at some length in Section 4A of this Opinion, the ALJ also reviewed the reports of the opining doctors. Record at 23-4. He concluded: "In sum, the above residual functional capacity assessment is supported by some of the claimant's abilities and activities of daily living, the opinions of Drs. Bermudez, Rochester, and Frey, the course of conservative treatment, and the medical evidence as a whole." Record at 24.

Clearly, there is no basis for Jewell's argument that the ALJ ignored his duty to assess her subjective symptoms as required by 20 C.F.R. § 404.1529 and SSR 16-3p. Nor is it accurate to say that the ALJ relied on "boiler plate." Instead, his assessment of Jewell's pain was supported by substantial evidence of record.

---

[2] Notes from Jewell's general practitioner at Lancaster General Health show that her daily activities also included a great deal of caretaking. Despite Jewell's testimony that her boyfriend was responsible for most of the care of her grandson, a treatment note from January 4, 2018, reported that she was "keeping busy" caring for her then 10-month-old grandson. Record at 557. On October 16, 2018, Jewell brought her grandson with her to an appointment. Record at 579. On November 13, 2018, Jewell told her doctor that she was "the primary caregiver to her grandson right now." Record at 597. Sadly, for two years, Jewell's responsibilities also included caring for her mother, who was dying of cancer. On September 26, 2016, Jewell told her physician that her mother was living with her, and "requiring significant amount of care." Record at 537. Although this note predated the alleged disabled date, Jewell's care for her mother extended into the alleged period of disability. Record at 548 (Lancaster General Health note of September 22, 2017). The ALJ did not discuss this evidence, but it tends to support his conclusion that Jewell was capable of a reduced range of light work.

V.	Conclusion

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

		BY THE COURT:


		*/s/ Scott W. Reid*
		_____
		SCOTT W. REID
		UNITED STATES MAGISTRATE JUDGE